**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN**


**JEFFREY SCALES**
          Plaintiff

**v.**                                                            **No. 1:07CV-00153-J**

**MICHAEL ASTRUE**
          Commissioner of Social Security
          Defendant


**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the

final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by

M. Gail Wilson. The fact and law summaries of the plaintiff and the defendant are at Docket Entry

Nos. 17 and 23, respectively. This matter has been referred to the undersigned magistrate judge for

report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on October 27, 2006, by

administrative law judge (ALJ) Roger Reynolds. In support of his decision denying Title II and

Title XVI benefits, Judge Reynolds entered the following numbered findings:

1. The claimant last met the insured status requirements of the Social Security Act on
June 30, 2005.

2. The claimant has not engaged in substantial gainful activity since February 14, 2002, the
alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: chronic low back pain with
degenerative disc disease of the lumbar spine and herniated discs at L3/L4 and L4/L5 with stenosis;
a major depressive disorder; a panic disorder; and alcohol and drug abuse, in remission by history
(20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work not requiring operation of foot pedal controls; allowing a sit/stand option; not requiring prolonged standing/walking in excess of one hour without interruption; not requiring bending or twisting at the waist; involving occasional stooping, kneeling, crouching and crawling; not requiring working at heights, around industrial hazards or vibration; involving occasional climbing of stairs and ramps; not requiring exposure to concentrated temperature extremes; and not requiring frequent changes in work routines; performing detailed or complex problem solving, independent planning or the setting of goals, fast paced assembly lines, rigid work schedules, or more than occasional interaction with co-workers, supervisors or the general public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was 45 years old on the alleged onset date of disability.  This is defined in the regulations as a younger individual age 45-49.  On May 1, 2006, the claimant was 6 months from his 50th birthday, which is classified as closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Prior to May 1, 2006, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Beginning on May 1, 2006, the claimant has not been able to transfer any job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Prior to May 1, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  Beginning on May 1, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12.  The claimant was not disabled prior to May 1, 2006, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13.  The claimant was not under a disability within the meaning of the Social security Act at any time through June 30, 2005, the date last insured (20 CFR 404.315(a) and 404.320(b)).

14.  The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 404.1535).

(Administrative Record (AR), pp. 25-29).

### Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision.  42 U.S.C. § 405(g), sentence four.  In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision.  *Richardson v. Perales*, 402 U.S. 389 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981).  It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict."  *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988).  In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992).  However:

> The substantial-evidence standard allows considerable latitude to administration decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that  was before the Commissioner on the date of the final decision.  When  the Appeals Council declines to review the ALJ's decision and render a new decision, the  ALJ's decision becomes the Commissioner's final decision.  *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2.   To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.  To qualify for supplemental security income (SSI) benefits, a claimant  must  file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.    The  determination of disability is essentially the same for Title II and Title XVI purposes.

3.  Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe."  A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that  are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's  ability   to work,

irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985).  Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.   In addition,  the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R.  §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990).  If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule.  Section 200.00(a) of Appendix 2; 20 C.F.R.  §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2;   20   C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986).   Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

The ALJ found the plaintiff to be disabled at the fifth and final step of the sequential evaluation process as of May 1, 2006, based upon a direct application of Rule 201.14 of Appendix 1 of the regulations, the so-called medical-vocational guidelines, or grids.  The foregoing rule contemplates, among other things, an individual who is "closely approaching advanced age" and is limited to "sedentary" work.  The ALJ found that, before May 1, 2006, the plaintiff retained the ability to perform a significant number of "sedentary" jobs in the national economy.  The ALJ based this latter finding upon testimony from a vocational expert (VE).  The VE testified that an individual of the plaintiff's age prior to May 1, 2006 (i.e., a "younger" individual), and having the limitations summarized in ALJ's Finding No. 5 would retain the ability to perform the "sedentary" jobs identified on page 8 of the ALJ's decision (AR, pp. 29).  Unless the plaintiff points the court to evidence in the administrative record of a vocationally-significant limitation in excess of those stated in Finding No. 5, the court should affirm the ALJ's decision upon the strength of the vocational

testimony.  <u>See</u> *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).  The plaintiff has failed to identify

any such restriction.  Therefore, the magistrate judge shall recommend an affirmance of the

Commissioner's final decision.  We shall consider the plaintiff's specific contentions in turn.

As indicated above, the ALJ found that the plaintiff became disabled on May 1, 2006.

Hence, the plaintiff was eligible for Title XVI benefits as of that date.  However, the issue with

respect to the plaintiff's Title II claim is whether the evidence supports a finding of lack of disability

during the closed period from February 14, 2002, when the plaintiff alleges he became

disabled, through June 30, 2005, when his insured status for Title II benefits expired.

<u>See</u> ALJ Finding Nos. 1 and 2.

The plaintiff's first contention upon judicial review is that "the ALJ erred in determining that

Mr. Scales did not meet Listing 1.04" (Docket Entry No. 17, p. 3).  A person who proves that he

suffers from a spinal disorder satisfying objective medical criteria is presumed to be disabled at the

third step of the sequential evaluation process.  Listing 1.04, with emphasis added, provides as

follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis,
> spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral
> fracture), resulting in compromise of a nerve root (including the cauda equina) or the
> spinal cord. With:
>
> A. Evidence of **nerve root compression** characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss **(atrophy with
> associated muscle weakness or muscle weakness)** accompanied by sensory or
> reflex loss and, if there is involvement of the lower back, positive straight-leg raising
> test (sitting and supine); or
>
> B. **Spinal arachnoiditis**, confirmed by an operative note or pathology report of
> tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe
> burning or painful dysesthesia, resulting in the need for changes in position or
> posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Section 1.00B2b, in turn, provides as follows:

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, **examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces**, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

The plaintiff does not allege that he suffers from "spinal arachnoiditis" (Subpart B). Nor does he allege an "inability to ambulate effective as defined in 1.00B2b" (Subpart C). On November 23, 2003, Thadis Cos, M.D., found that "[t]he patient was able to ambulate without assistive device, and in my opinion, does not need assistive devices for ambulation"(AR, p. 483). On June 11, 2006, Troy Weirick, M.D., found that "[t]he patient did not need any assistive device for ambulation" (AR, p. 685). Therefore, it appears that the plaintiff is alleging that his disorder of the spine satisfies the criteria of Subpart A.

There is evidence of nerve root compression as required by Subpart A (AR, p. 606). However, the plaintiff has failed to allege or show the presence of "atrophy with associated muscle weakness or muscle weakness" as required by Subpart A. On June 23, 2005, Arul Verghis, M.D., found that the plaintiff has "normal strength in his upper and lower extremities," and on June 11, 2006, Dr. Weirick found "no evidence of muscle atrophy" (AR, pp. 671 and 684). The magistrate judge concludes that the plaintiff has failed to show that he suffers from a disorder of the spine meeting or equaling the medical criteria of Listing § 1.04.

8

Next, the plaintiff contends that the ALJ erred in finding his complaints of disabling pain to be credible only to the extent of the limitations stated in ALJ's residual functional capacity (RFC) Finding No. 5 (Docket Entry No. 17, pp. 5-8). Social Security Ruling (SSR) 96-7p provides how the Commissioner is to evaluate subjective complaints. The standard is consistent with that adopted by this circuit in *Duncan v. Secretary*, 801 F.2d 847, 853 - 854 (6th Cir., 1986), and is consistent with 20 C.F.R. §§ 404.1529 and 416.929 ("How we evaluate symptoms, including pain").

Prior to passage of the Social Security Disability Benefits Reform Act of 1984 (42 U.S.C. § 423 et seq.), the Social Security Administration was authorized to find claimants to be disabled based solely upon a finding that their complaints are credible in light of the evidence as a whole. The Act required that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability...; there must be [objective] medical signs and findings...." *Duncan* clarified that limitations due to pain or other subjective factors may be disabling. However, when a claimant asserts disability resulting from pain, his "statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(a) and 416.929(a). Rather, the claimant is required to provide "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment...which could reasonably be expected to produce the pain or other symptoms alleged." Id.

Applying the mandate of the Reform Act, the Sixth Circuit has developed a two-pronged inquiry for evaluating a claimant's complaints of subjective pain. Under the standard announced in *Duncan*, the court first must determine "whether there is objective medical evidence of an underlying medical condition." *Duncan*, supra. Provided such objective evidence exists, the

court must ask "whether objective medical evidence confirms the severity of the alleged pain...or...whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. The Commissioner may exercise his discretion to find a claimant's complaints of disabling pain to be credible only if the claimant is found to satisfy the first prong and either alternative of the second prong. Id.

Unless the objective medical evidence confirms the severity of the alleged pain, the Commissioner will consider the following factors:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001). The ALJ and not a reviewing court is to make credibility findings regarding a claimant's subjective complaints. *Murphy v. Secretary*, 801 F.2d 182, 184 (6th Cir., 1986). An ALJ's opportunity to observe the appearance and demeanor of a claimant during the hearing is invaluable and will not

"lightly be discarded" by a reviewing court. *Villarreal v. Secretary*, 818 F.2d 461, 463 (6th Cir., 1987). The notion that special deference is owed to a credibility finding by a trier of fact is deeply embedded in our laws. The opportunity to observe the demeanor of a witness, to evaluate what is said in light of how it is said, and to consider how it fits in with the rest of the evidence gathered is invaluable and should be give proper consideration. *Beavers v. Secretary*, 577 F.2d 383, 387 (6th Cir., 1978).

In this case, in establishing the plaintiff's RFC, the ALJ considered the factors set forth at 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), beginning at page 5 of his decision (AR, p. 26). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir., 1997).

The magistrate judge concludes that the plaintiff has pointed the court to evidence in the record of objective medical conditions that are reasonably capable of causing the degree of pain alleged, including radiographic evidence of degenerative changes, including herniated discs, at the L3-L4 and L4-L5 levels with stenosis. However, these conditions authorized but did not require the Commissioner to find the plaintiff's complaints of disabling pain to be credible. See *Duncan*, supra. The plaintiff has failed to show that the ALJ acted outside his province or abused his discretion in finding the plaintiff's complaint's of disabling pain to be credible only to the extent of his RFC Finding No. 5.

Finally, the plaintiff contends that the ALJ gave insufficient weight to the general assessment of functioning (GAF) scores assigned by Christopher Catt, Psy.D. (Docket Entry No. 17, p. 8). GAF scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context. ALJ's need not put "stock" in them. See *DeBoard v. Commissioner*, 2006 WL 3690637 and *Kornecky v. Commissioner*, 2006 WL 305648.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  The original objections shall be sent to the Clerk of Court either electronically or by mail.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).

12